IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| **Francisco Mateo** § | |
| **& Maria Medina** § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. 7:19-cv-419-RC |
| § | |
| **TA HSIN, INC. (d/b/a Great China),** § | |
| **Heng-Rung Tseng,** § | |
| § | |
| Defendants. § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

TO THE HONORABLE COURT:

Francisco Mateo and Maria Medina, Plaintiffs, complain of and against TA HSIN, INC. (d/b/a Great China) and Heng-Rung Tseng, Defendants, and for cause of action, show:

### I.   INTRODUCTION

1. This is an action for unpaid wages brought under the Fair Labor Standards Act (hereinafter "FLSA") 29 U.S.C. § 201 et seq. This action is brought by non-exempt food-service workers who were employed by Defendants at a restaurant known as Great China, located at 1015 North Texas Boulevard, Unit 20C, Weslaco, Hidalgo County, Texas. Defendants failed to pay Plaintiffs at least the federally mandated minimum wage for each hour they worked in a workweek. Defendants also failed to pay Plaintiff Francisco Mateo the required overtime pay for all hours worked in excess of forty hours during each workweek. Accordingly, Plaintiffs seek unpaid minimum wage and overtime compensation, liquidated damages, costs of court, and attorney's fees pursuant to 29 U.S.C. § 216(b), or in the alternative the Texas Minimum Wage Act, Tex. Labor Code § 62.001 *et seq*.

## II. JURISDICTION AND VENUE

2. Plaintiffs bring this case to recover unpaid minimum wage and overtime compensation under 29 U.S.C. § 201, *et seq*. As such, this Court has jurisdiction over Plaintiffs' FLSA claim pursuant to the following:

   a. 28 U.S.C. § 1331 (Federal Question);

   b. 28 U.S.C. § 1337 (Interstate Commerce); and

   c. 29 U.S.C. § 216(b) (FLSA).

3. This Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367 because the state law claim is so related to the federal claim that it forms part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(1) and (2) and 29 U.S.C. § 216(b) because Defendants' principal places of business are in Hidalgo County, Texas, and all or a substantial part of the acts or omissions giving rise to Plaintiffs' cause of action occurred in or around Hidalgo County, Texas.

## III. THE PARTIES

5. Plaintiff Francisco Mateo is an individual who worked for Defendants in Hidalgo County, Texas, and resides in Hidalgo County, Texas.

6. Plaintiff Maria Medina is an individual who worked for Defendants in Hidalgo County, Texas, and resides in Hidalgo County, Texas.

7. Defendant TA HSIN, INC. (d/b/a Great China) is a Texas corporation whose principal place of business is in Weslaco, Texas and may be served with process by serving its registered agent, Heng-Rung Tseng, at 700 Heron Avenue, McAllen, Hidalgo County, Texas 78504.

8. Defendant Heng-Rung Tseng is an individual who may be served with process at her residence, 700 Heron Avenue, McAllen, Hidalgo County, Texas 78504. Defendant Heng-Rung Tseng is also known as Nancy Tseng.

### IV.    FACTUAL ALLEGATIONS

#### FLSA COVERAGE AND EMPLOYEE AND EMPLOYER STATUS

9. From approximately March of 2016 to approximately November of 2019, Plaintiff Francisco Mateo worked as a food-service worker for Defendants at Great China.

10. From approximately August of 2009 to approximately October of 2019, Plaintiff Maria Medina worked as a food-service worker for Defendants at Great China.

11. At all relevant times, each of the Plaintiffs was an "employee" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

12. Plaintiff Mateo's job duties consisted of routine kitchen work, including food preparation, dishwashing, and other related activities.

13. Plaintiff Medina's job duties consisted of waiting tables, including clean-up duties and other related activities.

14. Plaintiffs were supervised by and received instructions from managers on a daily basis.

15. At all relevant times, Plaintiffs were employed in an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

16. Defendants collectively operate a restaurant known as Great China, located at North Texas Boulevard, Suite 20C, Weslaco, Hidalgo County, Texas 78596.

17. Defendants' restaurant is, and has been for all times relevant to this action, an enterprise that has, at any given time, employed more than two (2) employees who handle and work with

goods that have been moved in or produced for commerce, including, but not limited to, serving utensils, foodstuffs, kitchen machinery, and cleaning supplies.

    a.    As food-service workers, each Plaintiff handled food that moved in interstate commerce. On information and belief, some of the food handled by Plaintiffs was delivered to Great China by Sysco and included, but was not limited to, meat, seafood, produce, rice, flour, cornstarch, and sugar, as well as soy sauce manufactured by Kikkoman Foods, Inc. in Wisconsin or California.

    b.    Each Plaintiff handled machinery and supplies which, on information and belief, was manufactured in part outside of the state of Texas, including an industrial dishwasher, dishware, cutlery, and/or detergent.

18.    Defendants' restaurant is an enterprise engaged in commerce whose gross annual volume of sales exceeds, and has for all times relevant to this action exceeded, $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

19.    During part of the relevant period, Defendants and/or related entities operated a second restaurant in Alamo, Texas doing business as Great China Buffet under unified operations or common control, constituting a single enterprise for purposes of coverage under the FLSA. The two restaurants' collective gross annual sales exceeded $500,000.

20.    At all times relevant to this action and as a matter of economic reality, each Defendant employed Plaintiffs within the meaning of the FLSA, 29 U.S.C. §§ 203(d) and 203(g). During the relevant time period, each Defendant has acted, directly or indirectly, in the interest of an employer with respect to Plaintiffs. Facts demonstrating that each Defendant was each Plaintiff's employer include, but are not limited to, the following:

a. Defendant TA HSIN, INC. owns and operates the Great China restaurant where the Plaintiffs worked.

b. On information and belief, Defendant Heng-Rung Tseng has an ownership interest in TA HSIN, INC. and the Great China restaurant.

c. At all times relevant to this action, Defendant Heng-Rung Tseng exercised operational control over Great China. Examples of Defendant Heng-Rung Tseng's operational control included, but was not limited to, the following:

   1. Defendant Heng-Rung Tseng is the current President and Director of Defendant TA HSIN, INC. (dba Great China).

   2. Defendant Heng-Rung exercised final authority over all decisions on general business matters of TA HSIN, INC.'s and the Great China restaurant.

   3. Defendant Heng-Rung Tseng maintained an office at Great China.

   4. Defendant Heng-Rung Tseng was at Great China on a daily or near daily basis.

   5. Defendant Heng-Rung's roles and responsibilities included but were not limited to controlling the hours of operation of Great China; supervising the hiring and firing of employees; supervising the scheduling of employees; monitoring employee attendance; monitoring employee performance; and handling payroll.

d. Defendant Heng-Rung Tseng possessed the authority to hire and fire Plaintiffs.

   1. Defendant Heng-Rung Tseng oversaw hiring and firing of the restaurants' staff, generally.

      2. Defendant Heng-Rung Tseng hired Plaintiff Mateo.

      3. Defendant Heng-Rung Tseng fired both Plaintiffs.

e. Defendant Heng-Rung Tseng possessed and exercised the authority to control the Plaintiffs' work schedules and conditions of employment.

      1. Defendant Heng-Rung Tseng managed scheduling and decided employees' days off.

      2. Defendant Heng-Rung Tseng monitored employees' attendance and was responsible for approving employees' requests for time-off.

      3. Defendant Heng-Rung Tseng supervised employees' performance and corrected employees' work on a regular basis.

      4. Defendant Heng-Rung Tseng informed employees of changes in their positions.

f. Defendant Heng-Rung Tseng determined the rate and method of Plaintiffs' payment.

      1. Defendant Heng-Rung had the authority to set employees' wage rates.

      2. Defendant Heng-Rung Tseng awarded Plaintiff Mateo multiple raises throughout his employment with Defendants.

g. Defendant Heng-Rung Tseng maintained Plaintiffs' and other employees' employment records.

      1. Defendant Heng-Rung Tseng processed payroll for Plaintiffs.

      2. Defendant Heng-Rung Tseng usually distributed pay to Plaintiffs on paydays.

## FLSA VIOLATIONS

21. Plaintiff Mateo regularly worked more than forty hours per workweek throughout his entire employment with Defendants.

22. From the beginning of his employment until approximately July 2017, Plaintiff Mateo regularly worked six days per week for a total of 60 to 63 hours per week.

23. Approximately around July 2017, there was a reduction in Great China's weekly business hours. After this shift took place, Defendants reduced Plaintiff Mateo's work schedule to five and a half days per week. From this point forward, Plaintiff Mateo regularly worked between 50 and 60 hours per week.

24. The timecards produced by Defendants demonstrate that Plaintiff Mateo regularly worked more than 40 hours per week, even after deducting Plaintiff Mateo's 30-minute meal break from the total hours. For example:

   a. A timecard produced by Defendants shows that in the workweek beginning May 10, 2017, Plaintiff Mateo clocked in and out at the following times:

| Date | Clock-in Time (AM) | Clock-out Time (PM) | Hours Worked |
|---|---|---|---|
| 5/10/2017 | 9:55 AM | 8:23 PM | 10:28 |
| 5/11/2017 | 9:54 AM | 8:25 PM | 10:31 |
| 5/12/2017 | 9:52 AM | 9:27 PM | 11:35 |
| 5/13/2017 | 9:57 AM | 9:27 PM | 11:30 |
| 5/14/2017 | 9:55 AM | 8:24 PM | 10:29 |
| 5/15/2017 | 9:52 AM | 8:28 PM | 10:36 |
| 5/16/2017 | - | - | 0:00 |
| | | *Total Hours Worked* | 65:09:00 (65.15 hours) |

When 30 minutes per full-day worked (3 hours) is subtracted from the totals above, Plaintiff Mateo's hours worked is 62.15.

  b. A timecard produced by Defendants shows that in the workweek beginning August 26, 2019, Plaintiff Mateo clocked in and out at the following times:

| Date | Clock-in Time (AM) | Clock-out Time (PM) | Hours Worked |
|---|---|---|---|
| 8/26/2019 | - | - | 0:00 |
| 8/27/2019 | 10:00 AM | 2:01 PM | 4:01 |
| 8/28/2019 | 9:54 AM | 8:28 PM | 10:34 |
| 8/29/2019 | 9:57 AM | 8:44 PM | 10:47 |
| 8/30/2019 | 9:58 AM | 8:28 PM | 10:30 |
| 8/31/2019 | 9:57 AM | 8:27 PM | 10:30 |
| 9/1/2019 | 9:57 AM | 8:29 PM | 10:32 |
| | | *Total Hours Worked* | 56:54:00 (56.9 hours) |

When 30 minutes per full-day worked (2.5 hours) is subtracted from the totals above, Plaintiff Mateo's hours worked is 54.4.

25. Plaintiff Mateo was never paid overtime compensation of one-and-a-half times his regular hourly rate for hours he worked over forty per workweek.

26. Defendants had a practice and policy to pay Plaintiff Mateo the same semimonthly salary for all hours worked, including those hours worked in excess of forty hours in a workweek.

27. Throughout his employment, Plaintiff Mateo was paid between $550 and $800 by Defendants on a twice monthly basis.

28. The amounts varied due to raises awarded to Plaintiff Mateo, and were not based on the number of hours he worked per week.

29. The effective hourly rate that Defendants paid Plaintiff Mateo—derived by dividing his total compensation per workweek by total hours worked—was regularly less than the minimum wage of $7.25 per hour. Examples of this fact include, but are not limited to the following:

    a. In the workweek displayed above in ¶ 24(a), Plaintiff Mateo's compensation was $253.85.[1] Dividing $253.85 by 62.15 hours amounts to an hourly rate of $4.08. This is below the minimum wage of $7.25 per hour.

    b. In the workweek displayed above in ¶ 24(b), Plaintiff Mateo's compensation was $369.23.[2] Dividing $369.23 by 54.4 hours amounts to an hourly rate of $6.79. This too is below the minimum wage of $7.25 per hour.

30. Plaintiff Medina was paid differently than Plaintiff Mateo. Plaintiff Medina was paid on an hourly basis.

31. For the hours that Defendants paid Plaintiff Medina at all, Defendants paid her a base hourly rate of $2.25 per hour and claimed a tip credit of $5.00 per hour.

32. Defendants required Plaintiff Medina to clock out approximately 30 minutes before finishing her work and leaving each shift, and Defendants did not pay Medina at all for this time worked "off the clock."

33. Plaintiff Medina worked two shifts per day—a morning shift and an afternoon shift—multiple times per workweek. On days where she worked two shifts, she worked approximately 30 minutes after clocking out for each shift, totaling approximately 60 minutes of unpaid "off-the-clock" work.

34. Plaintiff Medina is owed the minimum wage of $7.25 for all hours she worked "off-the-clock." Employers cannot claim a tip-credit for more than the difference between the base cash wage and $7.25 per hour.[3] Without exception, the hours compensated with a tip credit have only

---

[1] This weekly amount is found by multiplying his twice monthly pay by 24 pay periods in a year and dividing that total by 52 weeks in a year [($550*24) / 52) = $253.85].

[2] This weekly amount is found by multiplying his twice monthly pay by 24 pay periods in a year and dividing that total by 52 weeks in a year [($800*24) / 52) = $369.23].

[3] 29 U.S.C. § 203(m) (tip credit "is equal to the difference between the [base cash wage] and the wage in effect under section 206(a)(1) [$7.25]").

been paid, at most, at the minimum wage.[4] Therefore, when all compensation was paid using a tip credit as in Plaintiff Medina's case, any off-the-clock time necessarily results in a minimum wage violation.[5]

35. Plaintiff Medina worked between about 6 and 10 shifts per week depending on the week, often working about 8 shifts per week. These shifts combined totaled between approximately 31.5 and 38 hours worked per week, including her "off-the-clock" hours, on average throughout her employment.

36. Furthermore, in addition to failing to compensate Plaintiff Medina for the 30 minutes of work she performed after clocking out each shift, Defendants only paid Plaintiff Medina for the time she was scheduled to work, not the time for which she was clocked in.

37. Defendants required Plaintiff Medina to use a time keeping machine to clock in and out.

38. An agent of Defendants handwrote on each timecard Plaintiff Medina's daily schedule—the times she was scheduled to start and stop work—in a column next to the column containing stamped entries from the timekeeping machine Plaintiff Medina used to clock in and out each shift.

---

[4] "Section 3(m) limits the tip credit an employer may claim against its minimum wage obligations to the difference between the section 6(a)(1) minimum wage and the cash wage paid by the employer." U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook § 30d06(a), https://www.dol.gov/agencies/whd/field-operations-handbook. "Under this formula, the direct or cash wage paid by the employer, which may not be less than $2.13 per hour, plus the FLSA 3(m) tip credit (*i.e.*, the difference between the section 6(a)(1) wage and the cash wage paid) always equals the section 6(a)(1) minimum wage." *Id.*

[5] *See Goldin v. Boce Grp., L.C.*, 773 F. Supp. 2d 1376, 1380 (S.D. Fla. 2011) (where restaurant paid tipped employee with a tip credit only for her first 40 hours but did not pay at all for overtime hours, the tip credit is not invalidated for the first 40 hours, but employee is entitled to time-and-a-half her regular rate for unpaid overtime hours); *Muldowney v. Mac Acquisition, LLC*, No. 09-22489-CIV, 2010 WL 520912, at *1 (S.D. Fla. Feb. 9, 2010) (off-the-clock hours do not invalidate the tip credit for the hours that were compensated, but plaintiff "can seek unpaid wages for her alleged off-the-clock hours under state law or other sections of the FLSA"—that is, the non-tipped minimum wage or overtime provisions); *Perez v. Palermo Seafood, Inc.*, No. 07-21408-CIV, 2008 U.S. Dist. LEXIS 112252, at *3-8 (S.D. Fla. 2008) (reaffirming judgment where, "as for the work performed prior to the plaintiff's shift and after her shift, the Court did not apply the tip credit and found that the plaintiff was entitled to the full minimum wage").

39. Defendants then used the handwritten notes to calculate hours worked by Plaintiff Medina for purposes of payroll, even though the handwritten notes captured only her scheduled hours, not her hours actually worked.

40. So, in addition to her unpaid "off-the-clock" time, Defendants also failed to pay Plaintiff Medina for the difference between her scheduled hours and the longer hours she worked that were captured on her timecards. This unpaid time ranges between 1 minute to 90 minutes per day of time for which Plaintiff Medina was clocked in for, but was not paid. This unpaid time is also owed at the full minimum wage of $7.25 per hour.

41. At all times relevant to this action, Defendants failed to maintain complete and accurate records of Plaintiffs' hours of work and compensation as required by the FLSA.

42. At all times relevant to this action, Defendants knowingly, willfully, or with reckless disregard, carried out their illegal pattern or practice of failing to pay the required overtime and minimum wage compensation due to Plaintiffs.

43. All of the actions and omissions alleged in the paragraphs above were undertaken by Defendants either directly or through their agents.

## V.     CLAIMS FOR RELIEF

### FAIR LABOR STANDARDS ACT – MINIMUM WAGE

44. The above-described actions of Defendants violated Plaintiffs' right to minimum wage pay under the FLSA. Plaintiffs are entitled to recover their minimum wages, an equal amount in liquidated damages, attorney's fees, and costs of court, pursuant to 29 U.S.C. § 216(b).

45. Plaintiffs attached their consents to sue to their Original Complaint. *See* Dkt. No. 1-1, Exhibit A.

**FAIR LABOR STANDARDS ACT – OVERTIME**

46. The above-described actions of Defendants violated Plaintiff Francisco Mateo's right to overtime pay under the FLSA. Plaintiff Mateo is entitled to recover his overtime wages, an equal amount in liquidated damages, attorney's fees, and costs of court, pursuant to 29 U.S.C. § 216(b).

**TEXAS MINIMUM WAGE ACT**

47. The above-described actions of Defendants violated Plaintiffs' rights under the Texas Minimum Wage Act, for which Plaintiffs are entitled to recover minimum wage for hours worked, an equal amount in liquidated damages, attorneys' fees, and costs of court, pursuant to Tex. Labor Code §§ 62.201, 62.205.

48. Plaintiffs attached their verifications to their Original Complaint. *See* Dkt. No. 1-2, Exhibit B.

**VI.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

   a. Declare that Defendants, by their acts and omissions described above, violated Plaintiffs' rights under the FLSA;

   b. Award Plaintiffs their unpaid minimum wages, plus an equal amount in liquidated damages, for Defendants' violation of the FLSA minimum-wage provisions, 29 U.S.C. § 206; or, in the alternative, the Texas Minimum Wage Act;

   c. Award Plaintiff Francisco Mateo his unpaid overtime wages, plus an equal amount in liquidated damages, for Defendants' violation of the FLSA overtime provisions, 29 U.S.C. § 207;

   d. Award Plaintiffs their attorney's fees pursuant to 29 U.S.C. § 216(b); or in the alternative Tex. Labor Code § 62.205;

   e. Award Plaintiffs their costs of court;

  f.  Award Plaintiffs post-judgment interest; and

  g.  Grant such other relief as this Court deems just and proper.

Dated: March 3, 2021.

                Respectfully submitted,

                EQUAL JUSTICE CENTER
                8301 Broadway Street, Ste. 309
                San Antonio, Texas 78209
                Tel (210) 308-6222
                Fax (210) 308-6223
                www.equaljusticecenter.org

                By: /s/ Colleen Mulholland
                Colleen Mulholland
                Attorney-In-Charge
                Texas State Bar No. 24091765
                S.D. TX Bar No. 3151271
                8301 Broadway Street, Ste. 309
                San Antonio, Texas 78209
                Tel (210) 308-6222, ext. 101
                cmulholland@equaljusticecenter.org

                Aaron Johnson
                Admitted *Pro Hac Vice*
                Texas State Bar No. 24056961
                314 E Highland Mall Blvd., Ste. 401
                Austin, Texas 78752
                Tel (512) 474-0007, ext. 104
                ajohnson@equaljusticecenter.org

                COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

  I hereby certify that on March 3, 2021, I filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to all counsel of record.

                /s/ Colleen Mulholland
                Colleen Mulholland